UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CONOR MICHAEL GRANT,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 22-cv-11211<br>Honorable Robert H. Cleland<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 16, 20)**

I. **Introduction**

Plaintiff Conor Michael Grant appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court **RECOMMENDS** that:

- Grant's motion (ECF No. 16) be **DENIED**;
- the Commissioner's motion (ECF No. 20) be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## II.  Background

### A.  Grant's Background and Disability Application

Born in July 1969, Grant was 50 years old at the time of his application.  ECF No. 11, PageID.56.  Grant had no past relevant work.  *Id.*  He claimed to be disabled from bipolar disorder, depression, spinal stenosis, and anxiety.  *Id.*, PageID.225.  Grant's amended alleged onset date for his disability was in November 2019.  *Id.*, PageID.47.

After a hearing, during which Grant and a vocational expert (VE) testified, the ALJ found Grant not disabled.  *Id.*, PageID.47, 56.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.*, PageID.35.  Grant timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

3

the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Grant was not disabled.  At the first step, he found that Grant had not engaged in substantial gainful activity since the application date.  ECF No. 11, PageID.49.  At the second step, the ALJ found that Grant had the severe impairments of bipolar disorder, anxiety disorder, post-traumatic stress disorder, and alcohol addiction in reported remission.  *Id.*  Next, the ALJ concluded that none of Grant's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  *Id.*, PageID.50.

Between the third and fourth steps, the ALJ found that Grant had the RFC to perform a full range of work at all exertional levels, except that:

> The work should be limited to simple, repetitive work involving understanding, remembering and carrying out no more than simple instructions, and not involving complex or detailed instructions, and requiring no more than simple work related decisions.  The work must be free of fast-paced production requirements such as assembly line work, with few if any changes in work settings or work duties.  There should be no more than occasional interaction with supervisors and occasional interaction with coworkers, with no tandem task duties, and no interaction with the public.

*Id.*, PageID.51.  At step four, the ALJ found that Grant had no past relevant work.  *Id.*, PageID.56.  At the final step, after considering Grant's age,

4

education, work experience, RFC, and the testimony of the VE, the ALJ also concluded that he could perform jobs that existed in significant numbers in the national economy, including industrial cleaner, pipe stripper, and hand packager. *Id.*, PageID.57. The ALJ thus concluded that Grant was not disabled. *Id.*

### III. Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up). The substantial-evidence standard does not permit the Court to independently weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and

5

substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Grant argues that the Court should remand this matter because the ALJ erred in (1) evaluating whether Grant's mental impairments met the Listing of Impairments, (2) evaluating Grant's subjective complaints, and (3) posing to the VE a hypothetical that matched his impairments. ECF No. 16. The Court finds that Grant's arguments lack merit and that the ALJ's decision should be affirmed.

**B.**

Grant first argues that the ALJ erred in evaluating whether his mental impairments met the requirements of Listings 12.04, 12.06, or 12.15. ECF No. 16, PageID.656-659.

"Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless

6

of his or her age, education, or work experience.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. Apr. 1, 2011) (quoting 20 C.F.R. § 404.1525(a)). "A claimant must satisfy all of the criteria to meet the listing." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1525(c)(3). Thus, to support his argument that the ALJ committed reversible error by failing to properly analyze a listing, Grant "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433.

Listings 12.04, 12.06, and 12.15—which apply to depressive, anxiety, and trauma-related disorders—require assessing "paragraph B criteria." 20 C.F.R. pt. 404, Subpt. P, App. 1, Listings 12.04, 12.06, 12.15. The four paragraph B criteria are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.*, Listing 12.00(A)(2)(b). As the ALJ explained:

> To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively,

and on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

ECF No. 11, PageID.50.

The ALJ found that Grant had moderate limitations in all four paragraph B criteria.  *Id.*  With no marked or extreme limitations, Grant did not meet the Listings.  *Id.*  Regarding concentration, persistence, or maintaining pace, the ALJ considered Grant's claims that he had trouble focusing, following instructions, and completing tasks but that he could drive, prepare simple meals, watch television, manage funds, and handle his own medical care.  *Id.*  The ALJ also stated that "the record fails to show any mention of distractibility and an inability to complete testing that assesses concentration and attention."[2]  *Id.*  Regarding the ability to adapt or manage oneself, the ALJ noted Grant's claims that he had trouble handling change, dressing, bathing, and managing his mood.  *Id.*  But Grant also stated he could handle self-care and personal hygiene, while

---

[2] Grant contends this statement conflicts with the ALJ's later "finding" that Grant could "pay attention only a short time, and has difficulty following instructions."  ECF No. 16, PageID.689 (citing ECF No. 11, PageID.52).  But the later statement was not a finding; the ALJ merely summarized Grant's claim that he had trouble concentrating and following instructions.  *See* ECF No. 11, PageID.52.

treatment records showed that he had appropriate grooming and hygiene and got along well with medical providers.  *Id.*

Grant disputes the ALJ's statement that the record does not mention his distractibility and argues that the evidence shows he had marked limitations in concentrating, persisting, or maintaining pace.  ECF No. 16, PageID.656-658.  He contends that the ALJ ignored evidence, including opinions from consulting examiner Marianne Goergen, Psy.D.; primary care physician Louis Byrne, M.D.; and treating psychiatrist Chalichama Rao, M.D.  *Id.*

Although the *opinions* Grant cites reference impairments in concentration, the ALJ was correct that the *treatment records* do not mention his distractibility.  *See* ECF No. 11, PageID.53-54, 452-455, 472-473, 540-546, 560, 608-614.  In any event, the ALJ's finding that Grant was moderately limited in concentration, persistence, and pace is supported by substantial evidence.

As the ALJ summarized, Grant began seeing Dr. Rao in April 2019 and was prescribed medication for his bipolar disorder.  *Id.*, PageID.455.  During his return visits, Grant's thought process was more organized, he denied suicidal ideation, and he was described as "somewhat stable."  *Id.*, PageID.452-454.  Although Grant was hospitalized for suicidal ideation in

August 2019, he made consistent improvements with adjustments to his medication.  *Id.*, PageID.472-473.  When Grant saw Dr. Rao again in August to October 2020, he was "somewhat stable" on his medications, had a logical and relevant thought process, and denied mood swings.  *Id.*, PageID.608-610.

The ALJ also considered opinions from state agency reviewing physicians.  *Id.*, PageID.54-55.  Joe DeLoach, Ph.D., found that Grant had no limitations in understanding and memory and moderate limitations in interacting with others; concentration, persistence, and pace; and adapting.  *Id.*, PageID.231.  Dr. DeLoach also determined that Grant could perform simple, repetitive tasks on a sustained basis and would work best alone or in small, familiar groups with occasional interaction with coworkers and supervisors.  *Id.*, PageID.234.  And Barbara Jones Smith, Ph.D., found that Grant had moderate limitations in all paragraph B criteria and that he could perform simple, routine tasks on sustained basis with incidental public contact.  *Id.*, PageID.245, 249.

Contrary to Grant's argument, the ALJ addressed the opinions from Drs. Goergen, Byrne, and Rao.  *Id.*, PageID.55.  Dr. Goergen observed that Grant "appeared to miss questions" and may have been responding to internal stimuli.  *Id.*, PageID.530.  He was oriented and could repeat four

digits forward, two digits backward, and recall one out of three objects. *Id.*, PageID.531. Dr. Goergen found that he may have trouble relating with coworkers and supervisors but that he could complete simple tasks that would gradually increase in complexity. *Id.*, PageID.532. The ALJ found Dr. Goergen's recommendation partially persuasive and included similar limitations in the RFC. *Id.*, PageID.55.

Dr. Byrne found that Grant had marked limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *Id.*, PageID.626-627. Dr. Byrne also stated that Grant had severe anxiety and panic attacks that prevented him from leaving his house and that his concentration, focus, and memory were poor. *Id.*, PageID.628. The ALJ found Dr. Byrne's opinion unpersuasive, as it was not well supported and conflicted with Dr. Rao's psychological assessments. *Id.*, PageID.55.

Dr. Rao found that Grant had mild limitations in understanding and memory, mild to moderate limitations in sustained concentration and persistence, mild limitations in social interaction, and moderate limitations in adaptation. *Id.*, PageID.623-625. Dr. Rao stated that these limitations would interfere with Grant's ability to work on a regular and sustained basis 20% of the time and that he would miss all workdays. *Id.*, PageID.625.

11

The ALJ found this opinion unpersuasive, as it was internally inconsistent and "note[d] rather mild symptoms for such severe limitations, without explanation." *Id.*, PageID.55. The ALJ also reasoned that Dr. Rao's records showed that Grant was "stable and overall doing well." *Id.*

Thus, Grant's argument that the ALJ excluded these opinions lacks merit. And he does not argue that the ALJ's discussion of these opinions was flawed or lacked the support of substantial evidence. Instead, Grant essentially asks the Court to reweigh the evidence considered by the ALJ, which is not permitted. *See Hatmaker*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013); *Cutlip*, 25 F.3d 284, 286.

Grant also argues that he had marked limitations in adapting or managing himself, citing a June 2020 treatment record stating that he had poor hygiene and appetite, high anxiety, and was taking lithium for bipolar disorder. ECF No. 16, PageID.659 (citing ECF No. 11, PageID.557). The ALJ addressed that June 2020 record, noting Dr. Byrne's observation "that the claimant was having twice monthly sessions with Dr. Rao, as the claimant was 'a hermit.'" ECF No. 11, PageID.54. But the ALJ also cited records in which Dr. Rao said that Grant was "somewhat stable" on mediation. *Id.* (citing ECF No. 11, PageID.608, 610). And other records either note that Grant was appropriately dressed and groomed or do not

12

indicate that he was disheveled or unclean. *Id.*, PageID.473, 530, 540, 543, 545, 547. That Grant points to another record supporting his claim that he is markedly limited in his ability to adapt or manage himself is unavailing, as the Court may not reweigh the evidence and substitute its own judgment for that of the ALJ. *Hatmaker*, 965 F. Supp. 2d at 930. The Court thus finds no reason to disturb the ALJ's decision.

## C.

Grant next argues that the ALJ failed to properly assess his subjective symptoms, as he relied on "a flawed finding that the record did not show any mention of distractibility." ECF No. 16, PageID.660-661.

An ALJ's subjective symptom evaluation should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).[3] At the same time, "such determinations must find support in the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

---

[3] SSR 16-3p eliminated use of the term "credibility" from official policy and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." *Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight. *See, e.g., Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018).

An ALJ must explain the bases of his subjective symptom evaluation determination, and the reviewing court should not be left to speculate about the grounds for the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015). "Blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248 (cleaned up).

The ALJ considered Grant's claim that he has trouble paying attention and following instructions but found that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." ECF No. 11, PageID.52-53 (cleaned up). As discussed above, the ALJ did not err in finding that the treatment records contained no mention of distractibility. And the ALJ's findings about the severity of Grant's limitations in concentration are supported by substantial evidence. Thus, the ALJ did not err in discounting Grant's subjective symptoms.

## D.

Last, Grant argues that the hypothetical posed to the VE did not include a restriction for being off task more than 15% of the workday. ECF No. 16, PageID.661-662. As the VE testified, such a restriction would

14

preclude full-time competitive employment. *Id.* (citing ECF No. 11, PageID.163).

An ALJ does not err by relying on a VE's response to a hypothetical question if the hypothetical accurately represents the claimant's RFC. *Luteyn v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 739, 744 (W.D. Mich. 2007). And "a hypothetical question to a VE need not include unsubstantiated complaints." *Id.* (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). Since the hypothetical matched the RFC here, the ALJ did not err. *See* ECF No. 11, PageID.51, 162-163.

And if Grant argues that the RFC should have included a restriction to being off task more than 15% of the day, he fails to support that argument. Grant, who must show how his mental impairments "limited his ability beyond the ALJ's RFC," fails to meet this burden of citing "medical evidence connecting his [conditions] to specific functional limitations." *See Simpkins v. Comm'r of Soc. Sec.*, No. 20-10673, 2021 WL 4198404, at *3 (E.D. Mich. Apr. 8, 2021), *adopted*, 2021 WL 3771874 (E.D. Mich. Aug. 25, 2021). Although Dr. Rao stated that Grant's mental impairments would prevent him from working on a regular and sustained basis 20% of the

time, the ALJ reasonably found that opinion unpersuasive as discussed above.

## IV. Conclusion

The Court **RECOMMENDS** that Grant's motion for summary judgment (ECF No. 16) be **DENIED**, the Commissioner's motion for summary judgment (ECF No. 20) be **GRANTED**, and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: February 13, 2023

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 13, 2023.

s/Marlena Williams  
MARLENA WILLIAMS  
Case Manager